**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

In re:         :
           :
ALCOVY TRUCKING, LLC,  :   **Chapter 11**
           :
  Debtor.       :   **Case No. 24-58210-BEM**
           :

**ALCOVY TRUCKING, LLC'S**
**CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION**

**Dated this 4th day of November, 2024**

Filed by:

**ALCOVY TRUCKING, LLC**

PAUL REECE MARR, P.C.
Attorney for Alcovy Trucking, LLC
Paul Reece Marr, Esq.
6075 Barfield Road
Suite 213
Sandy Springs, GA 30328
Telephone: 770-984-2255
Email: paul.marr@marrlegal.com

COMES NOW Alcovy Trucking, LLC **(the "Debtor")** , the debtor and debtor in possession in the above-captioned bankruptcy case, and, pursuant to sections 1123, 1189, and 1190 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), proposes this Chapter 11 SubChapter V Plan of Reorganization (the "**Plan**") for the resolution of the Claims against the Debtor. The Debtor is the proponent of this Plan as required under section 1191 of the Bankruptcy Code.

## ARTICLE 1
## CONTENTS OF THE PLAN; REQUIRED DISCLOSURES

### 1.1 *Subchapter V Plan of Reorganization*.

This Plan is filed under Subchapter V of Chapter 11 of the Bankruptcy Code.

### 1.2 *History of the Debtor's Business Operations and Procedural Background*.

The Debtor was incorporated in the State of Georgia on December 28, 2016. The Debtor is a licensed and DOT registered trucking company running a freight hauling and dump truck business from Social Circle, Georgia.

The Debtor experienced a fluctuation in business and account receivable collections that necessitated filing its voluntary petition for relief under Chapter 11 Subchapter V of the Bankruptcy Code on August 6, 2024 (the "**Petition Date**"). In accordance with §§1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to control and manage its affairs as a debtor in possession.

On August 7, 2024, Alan Hinderleider, Esq. filed a Notice of Appearance on behalf of the United States Trustee and Gary M. Murphey was appointed Subchapter V trustee. The Meeting of Creditors required by § 341 (a) of the Bankruptcy Code was conducted on September 9, 2024 and continued several times thereafter. The Status Conference required by § 1188(a) of the Bankruptcy Code was held on September 24, 2024 and continued to and concluded on October 8, 2024. The deadline for filing a proof of claim for all creditors (except a governmental unit) was October 15, 2024 (the "**Bar Date**").

### 1.3 Current Management and Insiders.

**1.3.1 Directors and Officers**: Edward Watson is the sole manager, member, and officer. No change in the ownership and management of the Debtor is anticipated post-confirmation.

–2–

**1.3.2 <u>Insiders Employed by the Debtor</u>**: Edward Watson was the only insider employed by the Debtor pre-Petition. Pre-Petition compensation to Edward Watson fluctuated dependent on cash flow, but on average Mr. Watson received $1,000.00 weekly. It is anticipated that this structure will remain the same post-confirmation.

**1.4 Liquidation Analysis.**

As outlined below, in a hypothetical liquidation of the Debtor's assets, creditors holding Allowed Secured Claims would likely receive Distributions representing approximately 59.27% of their total Claim amounts [$863,120.00 ÷ $1,456,145.95= 59.27%] but creditors holding Priority and Unsecured Claims would likely receive no Distribution.

**Assets:** The liquidation value of the Debtor's assets is estimated as follows:

$5,000.00 cash on hand
+ <u>858,120.00</u> equipment
$863,120.00

**Liabilities:** Upon information and belief, creditors assert Claims against the Debtor as follows: Secured Claims in the aggregate amount of approximately $1,456,145.95, Priority Tax Claims in the amount of $2,373.40, and Unsecured Claims in the aggregate amount of approximately $639,642.78.

**Liquidation Proceeds:**

Based on the above analysis, it appears that in a forced liquidation there would be a partial Distribution to creditors holding Allowed Secured Claims, but no Distribution to creditors holding Allowed Priority Tax or Unsecured Claims. Moreover, this does not even contemplate any post-Petition payables, the administrative claims of the Debtor's professionals, the SubChapter V trustee fees, and the fees incurred by a hypothetical chapter 7 trustee.

Moreover, assets disposed of by "liquidation" or "fire" sale generally generate significantly less proceeds than assets that are marketed and sold as a going concern. Additionally, a Chapter 7 trustee would incur trustee's fees pursuant to § 326(a) or § 330 of the Bankruptcy Code.[1] The Debtor estimates that a hypothetical chapter 7 trustee would incur

---

[1] 11 USC § 326(a) states that a Chapter 7 trustee would incur trustee's fees equal to 25% of the first $5,000 of Liquidation Value of Assets; 10% of amount in excess of $5,000 but not in excess of $50,000 of Liquidation Value of Assets; 5% of any amount in excess of $50,000 but not in excess of $1,000,000; 3% of any amount in excess of $1,000,000 of the Liquidation Value of Asset, and commissions for auctioneers for personal property generally is equivalent to ten (10%) percent of the gross

approximately $10,000.00 of administrative expense.  Based on this analysis there would be no recovery for unsecured creditors.

The above liquidation analysis demonstrates that the Plan is in the best interest of creditors.  Holders of Allowed Claims and Interests will receive more under the Plan than they would if the Debtor's bankruptcy case was converted to chapter 7 of the Bankruptcy Code. Clearly the Plan is in the best interest of creditors.  Holders of Allowed Claims and Interests will receive more under the Plan than they would if the assets were liquidated under a hypothetical chapter 7 of the Bankruptcy Code.  The Debtor is worth more to creditors as an ongoing enterprise as opposed to a forced liquidation.

**1.5 *Alternative Confirmation Standards Under Section 1191(a) and (b)*.** The Debtor seeks to confirm this Plan by obtaining the consent of all Classes provided for in this Plan by a majority in number and two-thirds in amount of Allowed Claims actually voting. If the Debtor succeeds in obtaining the consent of all Classes, then the provisions of the Plan referencing and operating under section 1191(a) of the Bankruptcy Code will apply. If the Debtor is unable to obtain the consent of all Classes, then the Debtor requests that the Court confirm the Plan under 1191(b). In this case, the provisions of the Plan referencing and operating under section 1191(b) of the Bankruptcy Code will apply.

**1.6 *Property and Claims*.** This Plan deals with all property of the Debtor and provides for treatment of all Claims against the Debtor and its properties.

## ARTICLE 2
## DEFINITIONS AND GENERAL PROVISIONS

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan. Any term that is not defined herein but is defined in

---

sales price and commissions for real property brokers is generally six percent (6%) of the gross sales price. In addition, the attorney for the Chapter 7 trustee would incur attorney's fees as would the current Chapter 11 attorneys.  11 USC § 330 provides for reasonable compensation for actual, necessary service rendered by the trustee and reimbursement for actual, necessary expenses.

the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term therein.

**2.1 *Definitions*.** The following terms, when used in this Plan, shall have the following meaning:

**2.1.1 "*Administrative Expense Claim*"** means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

**2.1.2 "*Allowed Claim*"** shall mean a Claim or any portion thereof that is enforceable against the Debtor or enforceable against the property of the Debtor under sections 502 or 503 of the Bankruptcy Code.

**2.1.3 "*Allowed Secured Claim*"** shall mean the amount of the allowed Claim held by parties secured by property of the Debtor which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

**2.1.4 "*Allowed Unsecured Claim*"** shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

**2.1.5 "*Assets*"** means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of the Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

**2.1.6 "*Avoidance Action*"** means any claim or cause of action of the Estates arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

**2.1.7 "*Ballot*"** means each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

**2.1.8 "*Bankruptcy Case*"** means the chapter 11 case initiated by the Debtor filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Subchapter V of Chapter 11 of the Bankruptcy Code.

**2.1.9 "*Bankruptcy Code*"** means title 11 of the United States Code.

**2.1.10 "*Bankruptcy Court*"** means the United States Bankruptcy Court for the

–5–

Northern District of Georgia, Atlanta Division.

**2.1.11** *"Bankruptcy Rules"* means, collectively, the Federal Rules of Bankruptcy Procedure.

**2.1.12** *"Business Day"* means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

**2.1.13** *"Cash"* means legal tender of the United States of America and equivalents thereof.

**2.1.14** *"Causes of Action"* means all Avoidance Actions and any and all of the Debtor' actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

**2.1.15** *"Chapter 11"* means chapter 11 of the Bankruptcy Code.

**2.1.16** *"Chapter 11 Case"* means this case under chapter 11 of the Bankruptcy Code in which the Debtor is a Debtor in Possession.

**2.1.17** *"Claim"* means a claim against the Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**2.1.18** *"Classes"* means a category of Claims described in this Plan.

**2.1.19** *"Confirmation Date"* means the date on which the Bankruptcy Court enters the Confirmation Order.

**2.1.20** *"Confirmation Hearing"* means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1191 of the Bankruptcy Code, as such hearing may be continued.

**2.1.21** *"Confirmation Order"* means the order confirming this Plan pursuant to section 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtor.

**2.1.22 Intentionally omitted.**

**2.1.23** *"Disallowed Claim"* means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in the Debtor's Schedules at $0.00, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the

Bankruptcy Court, or (iii) is not listed in the Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

   **2.1.24 "*Disputed Claim*"** means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

   **2.1.25 "*Distribution*"** means any distribution by the Debtor or the Reorganized Debtor to a Holder of an Allowed Claim.

   **2.1.26 "*District Court*"** means the United States District Court for the Northern District of Georgia, Atlanta Division.

   **2.1.27 "*Effective Date*"** is the first (1st) Business Day following the date that is fourteen (14) days after the entry of the Confirmation Order; but if a stay of the Confirmation Order is in effect on that date, then the Effective Date will be the first (1st) Business Day after that date on which no stay of the Confirmation Order is in effect provided that the Confirmation Order has not been vacated.

   **2.1.28 "*Estate*"** means, with regard to the Debtor, the estate that was created by the commencement by the Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of the Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that the Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise. In the event that this Plan is confirmed by the Bankruptcy Court under section 1191(b) of the Bankruptcy Code, such definition shall also include (1) all of the property defined by section 541 of the Bankruptcy Code and (2) any earning from services performed by the Debtor, both that the Debtor acquires after the commencement of the Bankruptcy Case but before the Bankruptcy Case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurs first.

   **2.1.29 "*Executory Contract or Unexpired Lease*"** means all executory contracts and unexpired leases to which the Debtor is a party.

   **2.1.30 "*Filing Date*"** means August 6, 2024, being the date that the Debtor filed its chapter 11 bankruptcy petition for relief.

−7−

**2.1.31 "*Final Distribution*"** means the Distribution by the Debtor or Reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

**2.1.32 "*Final Distribution Date*"** means the Distribution Date on which the Final Distribution is made.

**2.1.33 "*Final Order*"** means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

**2.1.34 "General Unsecured Claim"** means any Claim against the Debtor that is not (a) an Other Priority Unsecured Claim, (b) an Administrative Expense Claim, (c) a Professional Fee Claim, (d) a Priority Tax Claim, (e) a secured Claim, (f) any Claim that constitutes an Interest, and (g) entitled to priority treatment under the Bankruptcy Code or any order of the Bankruptcy Court.

**2.1.35 "*Holder*"** means a holder of a Claim or Interest, as applicable.

**2.1.36 "*Impaired*"** shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

**2.1.37 "Interest"** means any equity security (as defined in section 101(16) of the Bankruptcy Code) in the Debtor.

**2.1.38 "*Initial Distribution Date*"** means the Effective Date.

**2.1.39 "*Lien*"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**2.1.40 Other Priority Unsecured Claim**: Any Claim, other than an Administrative Claim, Professional Fee Claim, or a Priority Tax Claim, which is entitled to priority under Bankruptcy Code section 507(a).

**2.1.41 "*Person*"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

**2.1.42 "Petition Date"** means August 6, 2024, the date that the Debtor filed its chapter 11 bankruptcy petition for relief.

**2.1.43 "*Plan*"** means this Plan of Reorganization as the same may hereafter be corrected, amended, supplemented, restated, or modified.

**2.1.44 "*Priority Claim*"** means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**2.1.45 "*Priority Tax Claim*"** means a Claim against the Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

**2.1.46 "*Priority Wage Claim*"** means a Claim against the Debtor that is of a kind specified in sections 507(a)(4) of the Bankruptcy Code.

**2.1.47 *Professional Compensation*"** *means* (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtor and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

**2.1.48 "*Record Date*"** means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

**2.1.49 "*Record Holder*"** means the Holder of a Claim as of the Record Date.

**2.1.50 "*Related Parties*"** means with, respect to any Person or Entity, such Person's or Entity's direct and indirect current and former affiliates, subsidiaries, shareholders, partners (including general partners and limited partners), investors, managing members, members, officers, directors, principals, employees, managers, controlling persons, agents, attorneys, financial advisors, real estate advisors, investment bankers, Professionals, advisors, and representatives, each in their capacity as such.

**2.1.51 "*Reorganized Debtor*"** means the Debtor on and after the Confirmation Date.

**2.1.52 "*Retained Action*"** means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or the Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action

–9–

against any Persons for failure to pay for products or services provided or rendered by Dunwoody Labs, (iii) claims and Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or rising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

**2.1.53** *"Schedules"* means the Schedules of Assets and Liabilities that the Debtor filed in this Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

**2.1.54** *"Secured Claim"* means a Claim against the Debtor to the extent secured by a Lien on any property of the Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

**2.1.55** *"Statutory Interest"* shall mean, unless the Bankruptcy Court determines otherwise at the Confirmation Hearing, for all Holders who are entitled to interest under 11 U.S.C. § 511, including the Holder of an Allowed Priority Tax Claim who is entitled to interest under U.S.C. § 511, the rate of interest charged by such Holders under non-bankruptcy state or federal law as of the Confirmation Date.

**2.1.56** *"Subchapter V Trustee"* means Gary M. Murphey, or any successor to Gary M. Murphey appointed by the United States Trustee under section 1183(a) of the Bankruptcy Code to serve as the Subchapter V trustee in this Bankruptcy Case.

**2.1.57** *"Subordinated Claim"* means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

**2.1.58** *"Unimpaired"* means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

**2.1.59** *"Unsecured Claim"* means any Claim against the Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

**2.2** *Time.* Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday,

Sunday, or legal holiday.

**2.3 *Events of Default.*** Unless otherwise specifically provided under the Plan, in the event of a default by the Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to the Debtor at the address of record for the Debtor as reflected on the docket for this Bankruptcy Case, unless the Debtor provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that the Debtor have fifteen (15) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by the Debtor and the Debtor's counsel of the Default Notice (or the following business day if the 15th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to the Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Paul Reece Marr, Esq., or to such other attorney as the Reorganized Debtor may notify the Holder in writing, at the address reflected in the then current directory of the State of Bar of Georgia. In the event the Plan is confirmed under 1191(b), the Holder must also provide a copy of the Default Notice to the Subchapter V Trustee at the address reflected on the case docket. The Debtor shall have fifteen (15) days or thirty (30) days (as applicable) from the Debtor's and the Debtor's counsel's receipt of the Default Notice to cure such default. Receipt by the Debtor's attorney or the Subchapter V Trustee shall not be deemed receipt by the Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. If the Reorganized Debtor does not cure said default within such time frame, then the claimant may exercise any and all rights and remedies that it may have under applicable law and/or seek such relief as may be appropriate in this Court. In addition, the Court may retain jurisdiction to hear certain matters even after the case has been closed.

**2.4 *Notices.*** All notices under the Plan shall be in writing. Unless otherwise specifically provided herein, all notices shall be sent to the Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for the Debtor in this Case, unless the Debtor has provided such Holder with written notice of change of address for the Debtor, with a copy via email and certified mail to Paul Reece Marr, Esq., or such other attorney as the

–11–

Reorganized Debtor shall notify Holder in writing, at the address reflected in the then current directory of the State Bar of Georgia. Receipt of notice by the Reorganized Debtor's attorney or the Subchapter V Trustee shall not be deemed receipt by the Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1 *Summary.*** The categories of Claims and Interests set forth below classify all Claims against the Debtor for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

**3.2 *Classes*:**

**3.2.1   Class 1** shall be the Secured Claim of BMO Bank, N.A. to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**3.2.2   Class 2** shall be the Secured Claim of Commercial Capital Company, LLC to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**3.2.3   Class 3** shall be the Secured Claim of First American Title Lending to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**3.2.4   Class 4** shall be the Secured Claim of John Deere to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**3.2.5   Class 5** shall be the Secured Claim of Northpoint Commercial Finance LLC to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**3.2.6   Class 6** shall be the Secured Claim of Trans Lease, Inc. to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**3.2.7   Class 7** shall be the Secured Claim of R&R Truck Crane & Equipment, LLC to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**3.2.8   Class 8** shall be the Claims of the General Unsecured Creditors not otherwise treated herein.

**3.29   Class 9** shall be the Claims of the Equity Security Holder.

## ARTICLE 4
## TREATMENT OF CLAIMS AND INTERESTS

The Classes, the treatment of each Class, and the voting rights of each Class are set forth below.  Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. The Debtor reserves the right to object to any and all Claims.  The Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e., at the percentage distribution or amount creditor would receive over the life of the Plan as designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

**4.1: Secured Claims:**

**Class 1 consists of the Secured Claim of BMO Bank, N.A. ("BMO Bank") to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** On July 27, 2023, the Debtor and BMO Bank, as lender, entered into that certain Loan and Security Agreement ending in 7001 (the "**Loan 7001 Agreement**"), pursuant to which Bank agreed to finance the Debtor's purchase of (1) one 2024 Peterbilt 579 Daycab identified by serial number -8556 (the "**2024 Peterbilt 579 Daycab**"), in exchange for a total payment of $303,366.96, payable in 72 monthly installments of $4,213.43 each, commencing on October 1, 2023. As consideration for entering into the Loan 7001 Agreement, the Debtor granted BMO Bank a security interest in and to the 2024 Peterbilt as more fully described in the Loan 7001 Agreement.

On August 10, 2023, the Debtor and BMO Bank, as lender, entered into that certain Loan and Security Agreement ending in 2001 (the "**Loan 2001 Agreement**", together with the Loan 7001 Agreement, the "**BMO Loan Agreements**"), pursuant to which BMO Bank agreed to finance the Debtor's purchase of (1) one 2024 Hicks 30' Dump Trailer identified by serial number -6067 (the "**2024 Hicks Dump Trailer**," together with the Loan 7001

Collateral, the "**BMO Collateral**"), in exchange for a total payment of $117,637.92, payable in 72 monthly installments of $1,633.86 each, commencing on October 1, 2023.  As consideration for entering into the Loan 2001 Agreement, the Debtor granted BMO Bank a security interest in and to the 2024 Hicks Dump Trailer as more fully described in the Loan 2001 Agreement.

Upon information and belief, BMO Bank asserts that the principal balance due under the Loan 7001 Agreement was not less than $217,660.90 as of August 6, 2024 and that the principal balance due under the Loan 2001 Agreement was not less than $85,427.92 as of August 6, 2024 for a total Claim in the amount of $303,088.82.  BMO Bank filed its Motion for Relief From the Automatic Stay on August 23, 2024 and the parties entered into a Consent Order resolving the same, entered on the docket on October 28, 2024 [Doc. No. 35], providing that the Debtor would remain in possession and use of the BMO Collateral and pay $3,000.00 per month to BMO Bank pending confirmation of the Debtor's Plan of Reorganization or as otherwise may be agreed by the parties.

BMO Bank asserts that the fair market value of the BMO Collateral is $179,120.00, consisting of: (i) the fair market value of the 2024 Peterbilt 579 Daycab of $140,625.00; and (ii) the fair market value of the 2024 Hicks Dump Trailer of $38,495.00.  Accordingly, BMO Bank is undersecured.

Under the Plan, BMO Bank's Claim shall be bifurcated into an Allowed Class 1 Secured Claim in the amount of $179,120.00 and an Allowed Class 8 General Unsecured Claim in the amount of $123,968.82 and paid accordingly. *See* 11 U.S.C. § 506(a)(1).  With regard to the Allowed Class 1 Secured Claim in the amount of $179,120.00, the Debtor shall pay to BMO Bank, beginning on the first (1st) day of the first (1st) month following the Effective Date, and on the like day of each month thereafter, approximately 83 consecutive monthly installment payments of $3,000.00 each, calculated by amortizing the $179,120.00 Allowed Secured Claim amount over 83 months at the interest rate as 10.00% per annum, at which point the Allowed Secured Claim shall be deemed paid in full.  In the interim, BMO Bank shall retain its Lien and said Lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date; however, once BMO Bank receives all payments due as to its Allowed Class

1 Secured Claim it shall promptly release its Liens and mark the same as satisfied. Class 1 is Impaired by the Plan and is entitled to cast a Ballot.

**Class 2 consists of the Secured Claim of Commercial Capital Company, LLC ("Commercial Capital") to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.**   Commercial Capital asserts a title lien on a 2024 Tandem Dump Truck owned by the Debtor and used in its business operations in order to secured a pre-Petition loan. Upon information and belief, the Claim amount is $200,000.00, the fair market value of the equipment is $135,000.00, and the pre-Petition monthly installment payments are approximately $4,000.00.

Under the Plan, Commercial Capital's Claim shall be bifurcated into an Allowed Class 2 Secured Claim in the amount of $135,000.00 and an Allowed Class 8 General Unsecured Claim in the amount of $65,000.00 and paid accordingly. *See* 11 U.S.C. § 506(a)(1). With regard to the Allowed Class 2 Secured Claim in the amount of $135,000.00, the Debtor shall pay to Commercial Capital, beginning on the first (1st) day of the first (1st) month following the Effective Date, and on the like day of each month thereafter, approximately 83 consecutive monthly installment payments of $2,868.35 each, calculated by amortizing the $135,000.00 Allowed Secured Claim amount over 60 months at the interest rate as 10.00% per annum, at which point the Allowed Secured Claim shall be deemed paid in full. In the interim, Commercial Capital shall retain its Lien and said Lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date; however, once Commercial Capital receives all payments due as to its Allowed Class 2 Secured Claim it shall promptly release its Liens and mark the same as satisfied. Class 2 is Impaired by the Plan and is entitled to cast a Ballot.

**Class 3 consists of the Secured Claim First American Title Lending ("First American") to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** First American asserts a title lien pursuant to a title pawn on a 30 ft. Gooseneck Trailer owned by the Debtor. Upon information and belief, the Claim amount is approximately $8,000.00 and the Debtor is unsure of the value of the equipment. The Debtor has no need of the equipment in its business operations and surrenders the same to First American. Any deficiency balance that may result after First American liquidates the equipment and applies the proceeds received against the

–15–

Claim amount shall be treated as an Allowed Class 8 General Unsecured Claim and paid accordingly. Class 3 is not Impaired by the Plan and is not entitled to cast a Ballot.

**Class 4 consists of the Secured Claim of Deere & Company to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** Deere & Company asserts a title lien on a 4052M Tractor, a Gator XUV865R (model year 2023) and related equipment owned by the Debtor and used in its business operations in order to secure a pre-Petition loan. Upon information and belief, the Claim amount is $80,512.89, the fair market value of the equipment is $30,000.00, the annual percentage rate is 2.39%, and the pre-Petition monthly installment payments are approximately $1,675.63.

Under the Plan, Deere & Company's Claim shall be bifurcated into an Allowed Class 4 Secured Claim in the amount of $30,000.00 and an Allowed Class 8 General Unsecured Claim in the amount of $50,512.89 and paid accordingly. *See* 11 U.S.C. § 506(a)(1). With regard to the Allowed Class 4 Secured Claim in the amount of $30,000.00, the Debtor shall pay to Deere & Company, beginning on the first (1st) day of the first (1st) month following the Effective Date, and on the like day of each month thereafter, approximately 60 consecutive monthly installment payments of $530.97each, calculated by amortizing the $30,000.00 Allowed Secured Claim amount over 60 months at the interest rate as 2.39% per annum, at which point the Allowed Secured Claim shall be deemed paid in full. In the interim, Deere & Company shall retain its Lien and said Lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date; however, once Deere & Company receives all payments due as to its Allowed Class 4 Secured Claim it shall promptly release its Liens and mark the same as satisfied. Class 4 is Impaired by the Plan and is entitled to cast a Ballot.

**Class 5 consists of the Secured Claim of Northpoint Commercial Finance LLC ("Northpoint Commercial") to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** Northpoint Commercial's claim against the Debtor arises out of a commercial finance agreement (the "**Mitsubishi Finance Agreement**") by and between Mitsubishi HC Capital America, Inc. ("**Mitsubishi**"), as lender, and the Debtor for the purchase of a 2024 Kenworth – T880 – Dump Truck with a 16'- CS155421222 – R/S Goodwin Dump Body S/N# 0054040, VIN -1526 (the "**2024 Kenworth Dump Truck**"). By virtue of an assignment, Mitsubishi assigned all of its right, title and interest in and to the Mitsubishi Finance

–16–

Agreement, including the equipment subject thereto, to Northpoint Commercial. Northpoint Commercial has a perfected security interest in the 2024 Kenworth Truck as noted on the Certificate of Title for the 2024 Kenworth Truck via Mitsubishi's lien, as assigned to Northpoint Commercial. Upon information and belief, Northpoint Commercial asserts a Secured Claim in the amount of $282,314.49 as of the Petition Date and the fair market value of the 2024 Kenworth Truck is $210,000.00.

Under the Plan, Northpoint Commercial's Claim shall be bifurcated into an Allowed Class 5 Secured Claim in the amount of $210,000.00 and an Allowed Class 8 General Unsecured Claim in the amount of $72,314.49 and paid accordingly. *See* 11 U.S.C. § 506(a)(1). With regard to the Allowed Class 5 Secured Claim in the amount of $210,000.00, the Debtor shall pay to Northpoint Commercial, beginning on the first (1st) day of the first (1st) month following the Effective Date, and on the like day of each month thereafter, 72 consecutive monthly installment payments of $3,890.43each, calculated by amortizing the $210,000.00 Allowed Secured Claim amount over 72 months at the interest rate as 10.00% per annum, at which point the Allowed Secured Claim shall be deemed paid in full. In the interim, Northpoint Commercial shall retain its Lien and said Lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date; however, once Northpoint Commercial receives all payments due as to its Allowed Class 5 Secured Claim it shall promptly release its Liens and mark the same as satisfied. Class 5 is Impaired by the Plan and is entitled to cast a Ballot.

**Class 6 consists of the Secured Claim of Trans Lease, Inc. ("Trans Lease") to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** Trans Lease asserts a claim against the Debtor in the approximate amount of $582,229.75 secured by a title lien 2024 Peterbilt 567 Truck w/ Tornado F4 Eco-Lite Hydroexcavator Body (the "**2024 Peterbilt Hydroexcavator**") owned and used by the Debtor in its business operations having an estimated value of $300,000.00.

Under the Plan, Trans Lease's Claim shall be bifurcated into an Allowed Class 6 Secured Claim in the amount of $300,000.00 and an Allowed Class 8 General Unsecured Claim in the amount of $282,229.75 and paid accordingly. *See* 11 U.S.C. § 506(a)(1). With regard to the Allowed Class 6 Secured Claim in the amount of $300,000.00, the Debtor shall pay to Northpoint Commercial, beginning on the first (1st) day of the first (1st) month following the Effective Date, and on the like day of each month thereafter, 60 consecutive monthly installment payments of $6,374.11 each, calculated by amortizing the $300,000.00 Allowed Secured Claim

–17–

amount over 60 months at the interest rate as 10.00% per annum, at which point the Allowed Secured Claim shall be deemed paid in full. In the interim, Trans Lease shall retain its Lien and said Lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date; however, once Trans Lease receives all payments due as to its Allowed Class 6 Secured Claim it shall promptly release its Liens and mark the same as satisfied. Class 6 is Impaired by the Plan and is entitled to cast a Ballot.

**Class 7 consists of the Secured Claim of R&R Truck Crane & Equipment, LLC ("R&R") to the extent allowed as a secured claim under § 506 of the Bankruptcy Code** pursuant to a pre-Petition Lease Agreement dated on or about March 2, 2024 regarding a 2024 Peterbilt 548 Dump Truck VIN -7239 (the "**2024 Peterbilt 548 Dump Truck**"). The payment schedule under the Lease Agreement calls for an initial down payment of $30,000.00, which has been paid, followed by 60 monthly payments in the amount of $3,849.00 beginning April 5, 2024. Under the Plan, the Debtor shall remain in use and possession of the 2024 Peterbilt 548 Dump Truck. The Debtor shall resume making the monthly lease payments as and when they come due. The Debtor shall continue to make the monthly installment payments after the stated termination date of the Lease Agreement so that any monthly payment arrearages can be cured. The Lease Agreement, as modified by the terms of the Plan, shall be assumed pursuant to Section 365 of the Bankruptcy Code on the Effective Date of the Plan. Class 7 is Impaired by the Plan and is entitled to cast a Ballot.

### 4.2: Unsecured Claims:

**Class 8 shall consist of General Unsecured Claims not otherwise treated herein.** Class 8 consists of General Unsecured Claims not otherwise treated herein. The Debtor believes but does not warrant that attached hereto as **Exhibit A** is a list of all known General Unsecured Claims in the aggregate amount of approximately $639,642.78.

#### *4.2.1: Confirmation under Section 1191(a)*

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, the Debtor shall pay to the Class 8 General Unsecured Creditors holding Allowed Claims, in full satisfaction of their respective Allowed Unsecured Claims, a *pro rata* share of $5,000.00 per month, commencing on the first (1st) Business Day of the first (1st) month immediately following the Effective Date, and continuing on the 1st Business Day of each month thereafter until the Debtor has made a total of 36 monthly installment payments to Class 8 creditors, in full satisfaction of the Allowed Class 8 General Unsecured Claims. The Debtor estimates but does not warrant that

–18–

if the Plan is confirmed consensually under Section 1191(a), then Class 8 creditors holding Allowed General Unsecured Claims will receive Distributions totaling approximately **28.14%** of their Allowed General Unsecured Claims. Class 8 is Impaired by the Plan and is entitled to cast Ballots.

### 4.2.2: Confirmation under Section 1191(b)

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, Class 6 shall be treated the same as if the Plan was confirmed under section 1191(a) of the Bankruptcy Code.

A copy of the Debtor's budget showing projected disposable income is attached to this Plan as **Exhibit C**. Notwithstanding anything else in this document to the contrary, any Allowed Claim shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor and the Debtor's obligations hereunder shall be reduced accordingly.

The Allowed Claims of the Class 8 Creditors are Impaired by the Plan and the holders of Allowed Class 8 Claims are entitled to vote to accept or reject the Plan.

### 4.3: Class 9 - Equity Interests.

This class consists of the Interests of the Debtor's Equity Holder Edward Watson. The Equity Holder will retain his Interest in the Reorganized Debtor as such Interest existed as of the Petition Date. This class is not impaired and is not eligible to vote on the Plan.

## ARTICLE 5
## TREATMENT OF UNCLASSIFIED CLAIMS

**5.1 Summary.** Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor is not classified for purposes of voting on or receiving Distributions under the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims, other than that of the Subchapter V Trustee, are instead treated separately in accordance with Article 6 of the Plan and in accordance with the requirements set forth in sections 1129(a)(9)(A) and 1191(e) of the Bankruptcy Code, as applicable.

**5.2 Debtor's Counsel.** The Law Office of Natalyn M. Archibong and the law office of Paul Reece Marr, P.C. (collectively, the "**Firms**") have represented the Debtor as bankruptcy counsel in this bankruptcy case. Each law office shall file Fee Applications and the Debtor shall pay the amounts approved by the Court on the Effective Date unless otherwise agreed to by the Firm. It is currently unknown what the amount of The Law Office of Natalyn M. Archibong's

Fee Application will be.  The law office of Paul Reece Marr, P.C. anticipates a Fee Application in the approximate amount of $15,000.00.

**5.3 *Administrative Expense Claims*.** Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and the Debtor, (iv) if the Plan is confirmed under section 1191(b) of the Bankruptcy Code, pro-rata over the period (a) starting on the first day of the month immediately following the month in which the order on the application by the holder of an Allowed Administrative Expenses Claim for compensation became a Final Order and (b) ending on the first day of the month in which the Final Distribution is due, or (v) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by the Debtor in the ordinary course of business after the Filing Date, or otherwise assumed by the Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be paid or performed by the Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

**5.4 *Proof of Claim for an Administrative Expense Claim*.** Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by the Debtor or the business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date. At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Debtor and the Subchapter V Trustee. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by the Debtor or the Estate. However, and notwithstanding anything contained herein to the contrary, the Internal Revenue Service shall not be required to file an Administrative Expense Claim in order to receive payment for any liability described in Bankruptcy Code sections 503(b)(1)(B) and (C) in accordance with Bankruptcy Code section 503(b)(1)(D).

**5.5 *Professional Fees*.** Other than the Subchapter V Trustee, any Person seeking an

award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

**5.6 *Priority Tax Claim:*** Consistent with § 1129(a)(9)(C) of the Bankruptcy Code and unless otherwise provided herein, each holder of a Priority Tax Claim shall be paid in full with interest at the statutory interest rate of 8% within 60 months of the Petition Date in equal monthly installment payments beginning on the 1st Business Day of the 1st month immediately following the Effective Date.  The Debtor is aware of the following Priority Tax Claim: Department of Treasury - Internal Revenue Service filed its Proof of Claim #9 on October 25, 2024 asserting a Priority Tax Claim in the amount of $2,373.40.  The Debtor estimates that the amount of the monthly Plan payment will be approximately $52.48.

**5.7 *Post-Confirmation Professional Fees.*** The Debtor may pay professional fees incurred after confirmation of the Plan without Court approval other than the fees of the Subchapter V Trustee which must be approved by the Court.

## ARTICLE 6
## SUBCHAPTER V TRUSTEE

### 6.1 Subchapter V Trustee.

The Subchapter V Trustee was appointed by the United States Trustee in this case to perform the duties described in section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual plan of reorganization.

### 6.2 Confirmation under either Section 1191(a) or Section 1191(b)

Regardless of whether this Plan is confirmed under either section 1191(a) of the Bankruptcy Code or Section 1191(b) of the Bankruptcy Code, the services of the Subchapter V Trustee shall terminate upon "substantial consummation" of the Plan, as defined in section 1101(2).  The Debtor shall directly make all payments required under this Plan, including the first payments required for substantial consummation of the Plan.

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3). Unless otherwise agreed to by the Subchapter V Trustee, the Debtor shall pay any unpaid allowed compensation owed to the Subchapter V Trustee on the later of (i) on the Effective Date and (ii)

–21–

the day after the order on the Subchapter V Trustee's application for compensation becomes a Final Order.

## ARTICLE 7
## MEANS FOR THE IMPLEMENTATION OF THE PLAN

**7.1 *Parties Responsible for Implementation of the Plan.*** Upon confirmation, the Debtor will be charged with administration of the Bankruptcy Case. The Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan.  The Debtor will file all post-confirmation reports required by the United States Trustee's office. The Debtor will also file the necessary final reports and may apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.  The Debtor shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to the Debtor.

**7.2 *Sources of Cash for Distribution.***

**7.2.1** The source of funds for the payments pursuant to the Plan is the future income of the Debtor from normal business operations.

**7.2.2 *Projections.*** Copies of The Debtor's monthly projections are set forth on **Exhibit B** to this Plan.  The Debtor's projections are based on previous periods of revenue generation as well as projections of future operations. The Debtor has contracts in hand and is able to reasonably project income and expenses based on such information.

**7.2.3** The Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. The Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

**7.2.4 *Preservation of Causes of Action.*** In accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, the Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of the Debtor (or any successors holding such rights of action). The failure of the Debtor to  specifically list any claim, right of action, suit, proceeding or other Retained

–22–

Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. The Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise.  The Debtor specifically reserves any cause of action against any of the Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. The Plan shall not be deemed a waiver of any right of the Debtor to collect any receivable or right to payment under any applicable laws. The Debtor expressly reserves the right to exercise any and all remedies available to the Debtor regarding their accounts receivable or rights to payment at law or in equity, at such time or times as the Debtor from time to time may elect. This Plan is filed with a full reservation of rights. Any failure by the Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. The Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as the Debtor may be entitled to applicable law. No delay on the part of the Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. This Plan is filed with a full reservation of rights.

**7.2.5 *Effectuating Documents, Further Transactions*.** The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

**7.2.6 *Exemption from Certain Transfer Taxes and Recording Fees*.** Pursuant to 11 U.S.C. § 1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from the Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of The Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax,

–23–

mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

       *7.2.7 Further Authorization.* The Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

       *7.2.8 Liabilities.* The Debtor will not have any liabilities except those expressly stated or assumed under the Plan. The Debtor will be responsible for all expenses incurred by the Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

**ARTICLE 8**
**DISTRIBUTIONS**

       **8.1** *Disbursing Agent.* Unless otherwise expressly provided for herein, all Distributions under this Plan shall be made by the Debtor or its agents.

       **8.2** *Distributions of Cash.* Except as otherwise provided for herein, any Distribution of Cash made by the Debtor pursuant to this Plan shall, at the Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

       **8.3** *No Interest on Claims or Interests.* Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between Dunwoody Labs and a Holder, post-petition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

       **8.4** *Delivery of Distributions.* The Distribution to a Holder of an Allowed Claim shall be made by the Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtor after the

–24–

date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtor is notified by such Holder in writing of such Holder's then-current address, at which time the Debtor shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by the Debtor and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to the Debtor and not claimed within six (6) months of return shall be irrevocably retained by the Debtor notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("**Unsecured Distribution**") is tendered by the Debtor to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("**Unsecured Distribution Refusal**"), the Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, the Debtor shall be relieved of any obligation to make said payment or Distribution and the Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("**Secured or Priority Distribution**") is tendered by the Debtor to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("**Secured or Priority Distribution Refusal**"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied. In the event of a Secured or Priority Distribution Refusal, any obligation of the Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to the Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from the Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce the Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "**Tolling Period**"). Only in the event of such notice to the Debtor shall The Debtor's obligations to perform as to the applicable Secured Claim or Priority

–25–

Claim resume. The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, the Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and the Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

**8.5 *Distributions to Holders as of the Record Date*.** All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed and there shall be no further change in the Record Holder of any Claim. The Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

**8.6 *Fractional Dollars*.** Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at the Debtor's option the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**8.7 *Withholding Taxes*.** The Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## ARTICLE 9
## PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS

**9.1 *Objections to Claims*.** Nothing herein shall constitute an admission as to the nature, validity, or amount of any Claim.  The Debtor reserves the right to object to any and all Claims, provided, however, that the Debtor shall not be entitled to object to Claims that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or that are Allowed by the express terms of this Plan.

**9.2 *No Distributions Pending Allowance*.** Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

**9.3 *Resolution of Claims Objections*.** On and after the Effective Date, the Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## ARTICLE 10
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

### *10.1.  Provisions Regarding Executory Contracts.*
Pursuant to Section 365 of the Bankruptcy Code, the Debtor assumes the following unexpired lease and/or executory contract on the Effective Date: the Lease Agreement with R&R Truck Crane & Equipment, LLC the subject of Class 7 herein.

Any unexpired leases or executory contracts which are not expressly assumed under the Plan shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after the Confirmation Date.  Any claims which are not timely filed will be disallowed and discharged.

## ARTICLE 11
## EFFECT OF PLAN ON CLAIMS AND INTERESTS

**11.1 *Vesting of Debtors' Assets*.** Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the

Bankruptcy Court) shall revest in the Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the earlier of the Effective Date and the entry of a Final Decree, the Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

**11.2 *Discharge.***

**11.2.1 Discharge if Plan Confirmed Under Section 1191(a).** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against the Debtor, whether known or unknown, including any and all liabilities of the Debtor, Liens on the Debtor's assets, obligations of the Debtor, rights against the Debtor, and Interests in the Debtor or the Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

**11.2.2 Discharge if Plan Confirmed Under Section 1191(b).** If the plan is confirmed under section 1191(b) of the Bankruptcy Code , as soon as practicable after completion by the Debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or (2) of the kind specified in section 523(a) of the Bankruptcy Code; provided further.

**11.3 *Setoffs*.** The Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such Holder.

**11.4 *Internal Revenue Service ("IRS")*.** Notwithstanding anything contained in the Plan

to the contrary, the Debtor shall not be discharged from estimated or unsatisfied tax obligations to the IRS.

Notwithstanding anything to the contrary contained in the Plan, any discharge of the claims of the IRS shall not be effective until all payments provided for the IRS contemplated within the Plan have been made. Notwithstanding anything to the contrary contained in the Plan, nothing shall affect the rights of the IRS to assert setoff and recoupment and such rights are expressly preserved. Notwithstanding anything to the contrary contained in the Plan, the Plan shall not release any non-debtor party, or bar or enjoin the IRS from the assessment and collection of any taxes owed, including any trust fund recovery penalties.

Notwithstanding anything to the contrary contained in the Plan, failure by the Debtor to make any payment to the IRS pursuant to the terms of the confirmed Plan shall be an event of default. If the Debtor fails to cure an event of default within fifteen (15) days after receipt of a written notice of default by the IRS to the Debtor and its attorney, then the administrative collection powers and rights of the United States, acting through the IRS, will be reinstated as such powers and rights existed prior to the filing of the bankruptcy petition by the Debtor and the IRS may (a) engage in administrative collection activity, (b) institute a collection action to enforce and collect the entire amount of its outstanding tax claim; (c) exercise and pursue any and all available remedies any and all rights and remedies it may have under applicable non-bankruptcy law or regulation without further leave of Court; and/or (d) seek such relief as may be appropriate. The Debtor shall be deemed to have received a written notice of default hereunder on the third (3rd) business day following the date of mailing of the same via Regular U.S. Mail, proper postage affixed.

*11.5 Injunction*. Upon entry of a Confirmation Order in this case, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action except as provided for under this Plan against: (1) the Debtor, or (2) against any property of the Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.

*11.6 Effect of Confirmation.*

*11.6.1* **Binding Effect**. On the Confirmation Date, the provisions of this Plan shall

be binding on the Debtor, the Estate, all Holders of Claims against or Interests in the Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan.  Creditors shall have no right to enforce a Claim against the the Debtor, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

*11.6.2* **Effect of Confirmation on Automatic Stay.** Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

*11.6.3* **Filing of Reports.**  The Debtor shall file all reports required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

*11.6.4* **Post-Effective Date Retention of Professionals.** Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Debtor may employ and pay professionals in the ordinary course of business.

### ARTICLE 12
### EFFECTIVE DATE

**12.1** *Conditions to the Effective Date.* The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with this Plan.

*12.1.1* The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

*12.1.2* All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to the Debtor in its reasonable discretion.

*12.1.3* The Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

**12.2** *Waiver of Conditions to Confirmation or Consummation.* The conditions set forth in Article 12.1 of this Plan may be waived, in whole or in part, by the Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to

satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**12.3 *Notice of Effective Date*.** Within seven (7) days of the Effective Date, the Debtor shall file a notice of occurrence of the Effective Date with the Bankruptcy Court.

## ARTICLE 13
## RETENTION AND SCOPE OF JURISDICTION OF THE BANKRUPTCY COURT

*13.1 Retention of Jurisdiction*. Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

*13.1.1* To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

*13.1.2* To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

*13.1.3* To resolve all matters related to the rejection, and assumption and/or assignment of any of the Debtor's executory contracts or unexpired leases;

*13.1.4* To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtor [2];

*13.1.5* To hear and rule upon all applications for Professional Compensation, including the Subchapter V Trustee;

*13.1.6* To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

---

[2] Notwithstanding anything to the contrary in the Plan, the Debtor shall be authorized to file any Retained Action related to the collection of accounts receivable in any state or local court with jurisdiction under applicable state law.

*13.1.7* To construe, interpret, or enforce any provisions in this Plan, and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

*13.1.8* To adjudicate controversies arising out of the administration of the Estate or the implementation of this Plan;

*13.1.9* To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

*13.1.10* To determine any suit or proceeding brought by the Debtor to recover property under any provisions of the Bankruptcy Code;

*13.1.11* To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under this Plan;

*13.1.12* To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

*13.1.13* To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

*13.1.14* To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Dunwoody Labs sold any of its assets during the Bankruptcy Case;

*13.1.15* To enter a final decree;

*13.1.16* To enter an order of discharge; and

*13.1.17* To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

**13.2 *Alternative Jurisdiction*.** In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto. Notwithstanding anything to the contrary herein, the Debtor shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to the Debtor) to which the Debtor is a party in any state or local court having jurisdiction over such action.

**13.3 *Final Decree*.** If the Plan is confirmed under 1191(a), the Bankruptcy Court may,

upon application of the Debtor, at any time after "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) the Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause. If the Plan is confirmed under 1191(b), the Bankruptcy Court may, upon application of the Debtor, at any time after Final Distribution, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

**14.1 *Modification of the Plan*.**  The Debtor shall be allowed to modify this Plan pursuant to section 1193 of the Bankruptcy Code to the extent applicable law permits.

**14.2 *Pre-Confirmation Modifications*.** The Debtor may modify the Plan at any time before the Confirmation Hearing by filing the modification with the Court.

**14.3 *Modification After Confirmation And Prior to Substantial Consummation*.**  The Debtor may modify the Plan upon a showing that circumstances warrant such a modification and after notice and hearing. If the Plan was confirmed under section 1191(a), any holder of a claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

**14.4 *Modification After Substantial Consummation*.** If the Plan has been confirmed under section 1191(b), the Debtor may modify the Plan upon a showing the circumstances warrant such a modification and after a notice and hearing.

**14.5 *Allocation of Plan Distributions Between Principal and Interest*.** To the extent that

any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**14.6 *Applicable Law*.** Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

**14.7 *Preparation of Estate Returns and Resolution of Tax Claims*.** The Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

**14.8 *Headings*.** The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

**14.9 *Revocation of Plan*.** The Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

**14.10 *No Admissions; Objection to Claims*.** Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Debtor's rights to object to or reexamine such Claim in whole or in part.

**14.11 *No Bar to Suits*.** Except as otherwise provided in Article 11 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop the Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any document filed by the Debtor in connection with this Bankruptcy Case or

whether or not any payment was made or is made on account of any Claim. Without limitation, the Debtor retains and reserves the right to prosecute Retained Actions.

**14.12 *Exhibits/Schedules*.** All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

## ARTICLE 15
## TAX CONSEQUENCES

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted. Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The Debtor assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Dated: November 4, 2024
Prepared and submitted,
PAUL REECE MARR, P.C.                     ALCOVY TRUCKING, LLC
Debtor's counsel

/s/ Paul Reece Marr                       /s/ Edward Watson
Paul Reece Marr (GA Bar #471230)          By: Edward Watson
6075 Barfield Road; Suite 213             Its: Manager
Sandy Springs, GA 30328
Telephone: 770-984-2255
email: paul.marr@marrlegal.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re:                                        :
                                              :
ALCOVY TRUCKING, LLC,                         :        Chapter 11
                                              :
        Debtor.                               :        Case No. 24-58210-BEM
                                              :

## CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing *ALCOVY TRUCKING, LLC'S CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION* using the Bankruptcy Court's Electronic Case Filing program which sends a notice of this document and an accompanying link to this document to all registered parties who have filed appearances in the above captioned case as follows:

Natalyn M. Archibong on behalf of Debtor
Alcovy Trucking, LLC
nmarchibong@gmail.com

Lanie Bandell on behalf of Creditor R&R
Truck Crane & Equipment, LLC
lbandell@loriumlaw.com,
GeorgiaFilings@loriumlaw.com;jenna-
munsey-6083@ecf.pacerpro.com

Kathleen G. Furr on behalf of Creditor
Northpoint Commercial Finance LLC
kfurr@bakerdonelson.com,
smeadows@bakerdonelson.com;ali.lowe@b
akerdonelson.com

Andrew D. Gleason on behalf of Creditor
Trans Lease, Inc.
agleason@lrglaw.com

Alan Hinderleider on behalf of U.S. Trustee
United States Trustee
Alan.Hinderleider@usdoj.gov

Charles Hoffecker on behalf of Creditor
BMO Bank, NA
chad@hhpatlanta.com

Gary M. Murphey
murphey@rfslimited.com,
GA73@ECFCBIS.COM

Philip L. Rubin on behalf of Creditor Trans
Lease, Inc.
prubin@lrglaw.com

Kevin A. Stine on behalf of Creditor
Northpoint Commercial Finance LLC
kstine@bakerdonelson.com,
smeadows@bakerdonelson.com;ali.lowe@b
akerdonelson.com

–36–

This the 4th day of November, 2024.


/s/ Paul Reece Marr
Paul Reece Marr
PAUL REECE MARR, P.C.
6075 Barfield Road; Suite 213
Sandy Springs, GA 30328
770-984-2255
paul.marr@marrlegal.com

**EXHIBIT A**
**KNOWN CLASS 8 GENERAL UNSECURED CLAIMS**
**AS TO ALCOVY TRUCKING, LLC**

| Name | Amount |
|---|---|
| Bank of America | $6,252.00 |
| BMO Bank, N.A. (see Class 1) | 123,968.82 |
| Commercial Capital Company, LLC (see Class 2) | 65,000.00 |
| Deere & Company (see Class 4) | 50,512.89 |
| Delta Community Credit Union Visa | 5,047.61 |
| First American Title Lending (see Class 3) | to be determined |
| Dept. of Treasury – Internal Revenue Service | 1,923.03 |
| Northpoint Commercial Finance LLC (see Class 5) | 72,314.49 |
| Trans Lease, Inc. | 282,229.75 |
| Truist Bank | 16,394.19 |
| United Bank | 16,000.00 |

Total                                              $639,642.78

**EXHBIT B**
**PROJECTIONS**

- 39 -

Alcovy Trucking, LLC                          Projection Receivables

November 2024

Alcovy Hydro Truck                            $30,0000.00

Based on 20-day work month

Trailer Dump                                  $12,000.00

Dump Truck                                    $,000.00

Dump Truck                                    $10,000.00

Total                                         $52,000.00

Alcovy Trucking, LLC                    Payable Projection

Month: Nov 2024

| | |
|---|---|
| Truck Payments | $21,000.00 |
| Insurance | $10,000.00 |
| Fuel | $10,000.00 |
| Maintenance | $ 5,000.00 |
| Payroll | $ 15,000.00 |
| Parking | $ 1,200.00 |
| Utilities, phones, GPS tracking | $ 2,200.00 |
| PPE/Safety Equipment | $ 1,000.00 |
| Water & Dump Fee- Hydrovac* | $ 6,000.00 |

Subject to contract*

| | |
|---|---|
| Total | $71,000.00 |

Alcovy Trucking, LLC                    Projection Receivables

December 2024

Alcovy Hydro Truck                      $20,0000.00

Based on 20-day work month, slow season

Trailer Dump                            $12,000.00

Dump Truck                              $0.00

Dump Truck                              $10,000.00

Total                                   $42,000.00

Alcovy Trucking, LLC                    Payable Projection

Month: December 2024

| | |
|---|---|
| Truck Payments | $21,000.00 |
| Insurance | $10,000.00 |
| Fuel | $10,000.00 |
| Maintenance | $ 5,000.00 |
| Payroll | $ 15,000.00 |
| Parking | $ 1,200.00 |
| Utilities, phones, GPS tracking | $ 2,200.00 |
| PPE/Safety Equipment | $ 1,000.00 |
| Water & Dump Fee- Hydrovac* | $ 6,000.00 |
| Subject to contract* | |
| Estimated Fuel Taxes, Highway Impact | |
| License, Registration Fees due Dec | $ 15,000.00 |
| | $86,400.00 |

Alcovy Trucking, LLC                          Projection Receivables

January 2025

Alcovy Hydro Truck                            $20,0000.00

Based on 20-day work month

Trailer Dump                                  $12,000.00

Dump Truck                                    $0.00

Dump Truck                                    $10,000.00

Total                                         $42,000.00

Alcovy Trucking, LLC                    Payable Projection

Month: January 2025

| | |
|---|---|
| Truck Payments | $21,000.00 |
| Insurance | $10,000.00 |
| Fuel | $10,000.00 |
| Maintenance | $ 5,000.00 |
| Payroll | $ 15,000.00 |
| Parking | $ 1,200.00 |
| Utilities, phones, GPS tracking | $ 2,200.00 |
| PPE/Safety Equipment | $ 1,000.00 |
| Water & Dump Fee- Hydrovac* | $ 6,000.00 |

Subject to contract*

| | |
|---|---|
| Total | $71,400.00 |

Alcovy Trucking, LLC                          Projection Receivables

February 2025

Alcovy Hydro Truck                            $20,0000.00

Based on 20-day work month, slow season

Trailer Dump                                  $10,000.00

Dump Truck                                    $0.00

Dump Truck                                    $12,00.00

Total                                         $42,000.00

Alcovy Trucking, LLC                    Payable Projection

Month:  February 2025

| | |
|---|---|
| Truck Payments | $21,000.00 |
| Insurance | $10,000.00 |
| Fuel | $10,000.00 |
| Maintenance | $ 5,000.00 |
| Payroll | $ 15,000.00 |
| Parking | $ 1,200.00 |
| Utilities, phones, GPS tracking | $ 2,200.00 |
| PPE/Safety Equipment | $ 1,000.00 |
| Water & Dump Fee- Hydrovac* | $ 6,000.00 |

Subject to contract*

| | |
|---|---|
| Total | $71,400.00 |

Alcovy Trucking, LLC                          Projection Receivables

March 2025

| | |
|---|---|
| Alcovy Hydro Truck | $40,0000.00 |
| Based on 20-day work month | |
| Trailer Dump | $20,000.00 |
| Dump Truck | $14,000.00 |
| Dump Truck | $14,000.00 |
| Total | $88,000.00 |

Alcovy Trucking, LLC                Payable Projection

Month:  March 2025

| | |
|---|---|
| Truck Payments | $21,000.00 |
| Insurance | $10,000.00 |
| Fuel | $10,000.00 |
| Maintenance | $ 5,000.00 |
| Payroll | $18 ,000.00 |
| Parking | $ 1,200.00 |
| Utilities, phones, GPS tracking | $ 2,200.00 |
| PPE/Safety Equipment | $ 1,000.00 |
| Water & Dump Fee- Hydrovac* | $ 6,000.00 |
| Subject to contract* | |
| | |
| Total | $74,400.00 |

Alcovy Trucking, LLC                                    Projection Receivables

April 2025

Alcovy Hydro Truck                                     $40,0000.00

Based on 20-day work month

Trailer Dump                                           $20,000.00

Dump Truck                                             $14,000.00

Dump Truck                                             $14,000.00

Total                                                  $88,000.00

Alcovy Trucking, LLC                    Payable Projection


Month: April 2025

| | |
|---|---|
| Truck Payments | $21,000.00 |
| Insurance | $10,000.00 |
| Fuel | $10,000.00 |
| Maintenance | $ 5,000.00 |
| Labor Cost | $ 18,000.00 |
| Parking | $ 1,200.00 |
| Utilities, phones, GPS tracking | $ 2,200.00 |
| PPE/Safety Equipment | $ 1,000.00 |
| Water & Dump Fee- Hydrovac* | $ 6,000.00 |

Subject to contract*


| | |
|---|---|
| Total | $74,000.00 |